En el Tribunal Supremo de Puerto Rico

| T-JAC, INC. (WAL-MART CAGUAS) Recurridos V. CAGUAS CENTRUM LIMITED PARTNERSHIP, S.E. MANLEY BERENSON ASSOCIATES PUERTO RICO Recurridos JUNTA DE PLANIFICACION Peticionaria ------------------------------- T-JAC, INC. (WAL-MART CAGUAS) Peticionaria V. CAGUAS CENTRUM LIMITED PARTNERSHIP, S.E. Recurridos JUNTA DE PLANIFICACION Recurrida | Certiorari 99TSPR54 |
|---|---|

Número del Caso: CC-98-9 cons CC-98-33

Abogados de la Parte Peticionaria: Lcda. Wanda Ortiz Rivera (Junta de Planificación)

Lcdo. Juan R. Marchand Quintero
Lcda. Ana L. Toledo(T-JAC, Inc.)

Abogados de la Parte Recurrida: Lcda. Leonor Porrata Doria

Abogados de la Parte Interventora:

Agencia Recurrida: Junta de Planificación

Juez del Tribunal de Primera Instancia:

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 4/12/1999

Materia:

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

T-JAC, Inc.
(Wal-Mart Caguas)

    Peticionarios-Recurridos

       v.

Caguas Centrum Limited
Partnership, S.E.                   CC-98-9          Certiorari
Manley Berenson Associates     Cons. CC-98-33
Puerto Rico

    Interventores-Recurrentes

Junta de Planificación

    Recurrida-Peticionaria

Opinión del Tribunal emitida por el Juez Presidente señor Andréu García


San Juan, Puerto Rico, a 12 de abril de 1999


Los peticionarios T-JAC, INC., (Wal-Mart Caguas) y Junta de Planificación de Puerto Rico, cuyos casos han sido consolidados, recurren de la sentencia del Tribunal de Circuito de Apelaciones (Circuito Regional de Caguas, Humacao y Guayama) dictada el 19 de mayo de 1997 y notificada el 23 de mayo de 1997. En dicha sentencia el mencionado foro apelativo revocó una resolución de la Junta de Planificación, fechada 6 de diciembre de 1995, que autorizó una consulta de ubicación de un desarrollo extenso para la construcción de un edificio cuyo uso sería dedicado a ventas al detal de una tienda Wal-Mart. Caguas Centrum Limited Partnership, S.E., solicitó reconsideración la cual fue denegada. Examinemos los hechos que dan lugar al presente recurso.

I

La Junta de Planificación aprobó mediante resolución de 2 de marzo de 1988, una consulta de ubicación para un proyecto industrial liviano en el Barrio Bairoa de Caguas en una finca de 29.20 cuerdas. Según surge de las determinaciones de hechos de la resolución mencionada, ese predio está comprendido en su mayoría dentro de un Distrito R-1 (Distrito Residencial de Baja Densidad Poblacional) y una pequeña porción al sureste en un Distrito I-1 (Industrial Liviano) en el Mapa de Zonificación de Caguas. Utilizando parámetros de un Distrito I-1, se aprobó la formación de veintiocho (28) solares con cabidas fluctuantes entre los 2,000 y 4,000 metros cuadrados que serían vendidos para el establecimiento de usos de almacén, taller de reparación y otros usos industriales livianos. Consideró la Junta que la sección 46.01 del Reglamento de Planificación Número 4 la faculta para considerar proyectos de desarrollo para industrias livianas en Distritos R-1 y que la Ley Número 75 de 24 de junio de 1975, según enmendada, conocida como Ley Orgánica de la Junta de Planificación, 23 L.P.R.A. sec. 62 et seq., en su artículo 14, le confiere a ese organismo autoridad para autorizar el uso de terrenos, **con sujeción a las normas y requisitos consignados en la ley**, dentro de los límites territoriales del Estado Libre Asociado de Puerto Rico. La Administración de Reglamentos y Permisos (ARPE)

aprobó un plano de desarrollo y el correspondiente permiso de urbanización para el proyecto industrial liviano.

El 8 de marzo de 1991, la Junta autorizó una enmienda a la consulta de ubicación a los fines de agrupar varios de los 28 solares aprobados originalmente, en 8 solares cuyas cabidas fluctuarían entre 3,100 y 57,540 metros cuadrados. Se expresó en la resolución al efecto, que estos solares serían utilizados para los usos originalmente aprobados por la Junta de Planificación y se cumplirían con todas las demás condiciones requeridas en la consulta. Las demás disposiciones de la resolución anterior continuarían vigentes, incluyendo los parámetros de zonificación I-1 a base de los cuales se aprobó originalmente la referida consulta. ARPE autorizó un plano de desarrollo preliminar alterno en consonancia con la consulta de ubicación enmendada y el 9 de julio de 1991 aprobó un anteproyecto de construcción de un proyecto de comercio y almacén de distribución al por mayor en el predio de 57,539.97 metros cuadrados que correspondía al solar número 8 y que Wal-Mart Puerto Rico, Inc., había adquirido el 29 de junio de 1991. El anteproyecto es la forma preliminar de un plano de construcción de obras así como de estructuras, que se somete a ARPE para determinar si cumple con las leyes y reglamentos aplicables. Reglamento de Planificación Núm. 4, infra, Sec. 2 (Definiciones).

Conforme a dicha aprobación se autorizó preliminarmente la construcción de un edificio de una planta con un área de estacionamiento de 981 vehículos y la provisión de un área para carga y descarga con capacidad para más de diez (10) furgones, entre otros. El establecimiento en cuestión estaba destinado a ser utilizado como un "Sam's Wholesale Club".

Sin embargo, el 21 de febrero de 1991, la Junta de Planificación había aprobado una resolución interpretativa de lo que significa o se define como comercio al detal y al por mayor. Por tanto, el 2 de marzo de 1994, ARPE concluyó que dentro de los parámetros de los Distritos I-1 no estaban permitidas las ventas al detal y que aunque la parte peticionaria planteaba que su tipo de negocio era uno de venta al por mayor, tanto el número de estacionamientos como de cajas registradoras eran indicativos de un establecimiento de venta al detal el cual no estaba permitido en una zonificación industrial. A tenor con lo antes expresado, el 2 de marzo de 1994, ARPE revocó el anteproyecto de construcción previamente aprobado.

La parte proponente presentó una moción de reconsideración la cual fue denegada por resolución el 22 de abril de 1994; en la misma ARPE tomó conocimiento oficial de otra solicitud de Wal-Mart para establecer un establecimiento "Sam's Wholesale Club" en Bayamón donde lo que se solicitaba era un permiso de construcción para un **comercio al detal**. El

Administrador de ARPE consideró que era incompatible la presentación de dos conceptos de ventas diametralmente opuestos para un mismo uso.

Así las cosas, el 10 de noviembre de 1994, T-JAC, INC., solicitó ante la Junta de Planificación otra enmienda a la consulta de ubicación, para cambiar el proyecto de desarrollo industrial liviano previamente aprobado a uno comercial. El nuevo proyecto propuesto estaría ubicado en el solar número 8 y consistiría en el establecimiento de una tienda por departamentos Wal-Mart de ventas al detal. Constaría de un edificio de 150,000 pies cuadrados y 1005 espacios de estacionamientos en un área de 14.63 cuerdas que ubican en un Distrito R-1, con una inversión de tres millones ($3,000,000.00) de dólares.

La Junta de Planificación ordenó la celebración de vista pública para discutir la enmienda a la consulta de ubicación, esta vez para considerar el mencionado proyecto comercial, cuya vista fue celebrada el 11 de abril de 1995. Luego de escuchar los planteamientos de la parte proponente, los opositores al proyecto y público en general, la Junta autorizó la ubicación del proyecto mediante resolución de 6 de diciembre de 1995. Luego de varios incidentes procesales, los interventores Caguas Centrum Limited Partnership, S.E., y otros, presentaron un recurso ante el Tribunal de Circuito de

Apelaciones[1] señalando como errores el haber concluido los procedimientos como una enmienda a la consulta de ubicación original 87-46-1210 JPU; el no determinar la procedencia de la variación ni sobre las circunstancias especiales o excepcionales que motivaron la autorización de la consulta y el no evaluar el caso de acuerdo a las disposiciones de la Ley de Política Pública Ambiental. El Tribunal de Circuito de Apelaciones acogió el planteamiento de los allí peticionarios y revocó la resolución de la Junta. Inconformes los peticionarios T-JAC, INC., y la Junta de Planificación acuden ante nos señalando que incidió el Tribunal de Circuito de Apelaciones al concluir que la Junta de Planificación no tenía la facultad para aprobar la consulta como una enmienda a la consulta original; al concluir que la Junta no podía aprobar la consulta de ubicación al amparo de la sección 97 del Reglamento de Planificación sin expresamente conceder una variación al uso o en su defecto rezonificar el distrito; y al concluir que procedía requerir una Declaración de Impacto Ambiental (DIA).

Examinados los autos originales y las posiciones de las partes en conjunto con la totalidad del expediente administrativo, resolvemos.

---

[1] El 6 de marzo de 1996 los recurrentes presentaron recurso de revisión ante el Tribunal de Primera Instancia, Sala Superior de Caguas. De conformidad con lo dispuesto en el Artículo 9.004 (a) de la Ley de la Judicatura de Puerto Rico de 1994, según enmendada, se refirió el caso al Tribunal de Circuito de Apelaciones.

II

Es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones administrativas en vista de la vasta experiencia y conocimiento especializado de la agencia por lo que la revisión judicial está limitada a determinar si la actuación administrativa fue razonable y cónsona con el propósito legislativo o si por el contrario fue irrazonable, ilegal o si medió abuso de discreción. Véase, Rivera Rentas v. A & C Development Corp., Op. de 26 de noviembre de 1997, 144 D.P.R. ___ (1997), 97 J.T.S. 143 a la pág. 344; Agosto v. Fondo del Seguro del Estado, Op. de 8 de marzo de 1993, 132 D.P.R. 866, 879 (1993). La Ley de Procedimiento Administrativo Uniforme en su sección 4.5 delimita el alcance de la revisión judicial de las decisiones administrativas al establecer que las determinaciones de hecho de las decisiones de las agencias serán sostenidas por el Tribunal si se basan en evidencia sustancial que obre en el expediente administrativo; no obstante, las cuestiones de derecho que no involucren interpretaciones efectuadas dentro del ámbito de especialización de la agencia son revisables en toda su extensión. Véase, 3 L.P.R.A. SEC. 2175; Rivera Rentas v. A & C Development Corp., supra, a la pág.344; Miranda v. Comisión Estatal de Elecciones, op. de 25 de octubre de 1996, 141 D.P.R. ___ (1996), 96 J.T.S. 137 a la pág. 236. Cuando

la interpretación que del estatuto hace la agencia produce resultados inconsistentes o contrarios al propósito de la ley ésta no puede prevalecer. Associated Insurance Agencies, Inc. v. Comisionado de Seguros de P.R., Op. de 26 de noviembre de 1997, 144 D.P.R. ___ (1997), 97 J.T.S. 142 a la pág. 332.

Las agencias administrativas están obligadas a observar estrictamente las reglas que ellas mismas promulgan. García Cabán v. U.P.R., 120 D.P.R. 167, 175, (1987). Una vez se ha adoptado una norma la agencia administrativa debe cumplirla y aplicarla en la manera en que está concebida, sirviendo siempre a los propósitos, objetivos y política pública que la forjaron. La agencia reguladora debe velar que los requisitos estatutarios establecidos en su reglamento sean cumplidos. Montoto v. Pelayo Lorié, Op. de 11 de marzo de 1998, 145 D.P.R.___ (1998), 98 J.T.S. 25 a la pág. 660.

El Reglamento de Planificación Número 4, conocido como Reglamento de Zonificación de Puerto Rico, (en adelante Reglamento de Planificación Núm. 4) en su edición revisada de 16 de septiembre de 1992, 23 R.P.R. sec. 650.1638 (1997), fue adoptado al amparo de la Ley Orgánica de la Junta de Planificación de Puerto Rico, 23 L.P.R.A. sec. 62 et seq.,y tiene como propósito guiar y controlar el uso y desarrollo de los terrenos con el fin de contribuir a la seguridad, el orden, la convivencia, la solidez económica y el bienestar

general de los actuales y futuros habitantes. La zonificación constituye el mecanismo mediante el cual se establecerán o fijarán los usos adecuados para todos los terrenos del país e islas adyacentes que le pertenecen. Reglamento de Planificación Núm. 4, supra, secs. 1.00-1.03. Es un instrumento para clasificar y designar terrenos en zonas y distritos y se establecen, para cada zona y distrito, las normas esenciales sobre cómo y dónde deben ubicarse las múltiples actividades sociales y económicas de Puerto Rico y disposiciones específicas sobre el uso o propósito de los terrenos y las obras y estructuras a permitirse. Reglamento de Planificación Núm. 4, supra, Sec. 2 (Definiciones); Id, Introducción.

A su vez, el "Plan de Usos de Terrenos de Puerto Rico" (PUT), con fecha de vigencia de 30 de octubre de 1995, en su sección 2.02 establece como política pública el intensificar los usos comerciales y de servicios, tanto públicos como privados, teniendo como criterio, entre otros, el requerir que los proyectos comerciales y de servicios se ubiquen en terrenos identificados y destinados para usos comerciales y de servicio. Véase, 23 R.P.R. sec. 650.824 (2)

III

El ordenamiento descrito anteriormente no impide la variación de una determinación hecha en un momento dado bajo ciertas circunstancias cuando han cambiado los factores que

la produjeron.  Dicho ordenamiento establece mecanismos para evitar que una reglamentación existente se convierta en un instrumento inflexible que impida amoldarse a situaciones extraordinarias. Asoc. de Res. de Baldrich, Inc. v. Junta de Planificación, 118 D.P.R. 759, 767 (1987).  Entre éstos se encuentran, sin limitarse a, las variaciones y el mecanismo de cambio de zonificación.

La variación de uso es un permiso para dedicar una propiedad a un uso prohibido por las restricciones impuestas por el Reglamento de Planificación en una zona o distrito y que sólo se concede, **vía excepción**, para evitar perjuicios a una propiedad cuando se demuestre que, debido a circunstancias extraordinarias, la aplicación estricta de esa reglamentación equivaldría a una confiscación de la propiedad.  Reglamento de Planificación Núm. 4 secs. 2.0, 98.0; Asoc. de Res. Baldrich, Inc. v. J.P. de P.R., a supra la pág. 768, Asoc., C.D. Octubre v. J.A.C.L., 116 D.P.R. 326, 332 (1985).  Por ser un mecanismo **de excepción** las variaciones han de ser concedidas en casos realmente extraordinarios y meritorios, sujetas a requisitos de ley. Fuertes v. ARPE, Op. de 17 de diciembre de 1993, 134 D.P.R. ___ (1993), 93 J.T.S. 165, a la pág. 11387;  La variación debe ser solicitada por formulario al efecto por su dueño o representante autorizado (Reglamento de Planificación Núm. 4, supra, sec. 98.01); se debe establecer que ninguno de los

usos permitidos en el distrito en cuestión es factible para esa propiedad desde el punto de vista físico o económico, tomando en consideración, entre otros criterios, los costos de adaptar la propiedad a los usos permitidos y los beneficios a ser derivados con el permiso de uso; **que el uso propuesto es compatible con los propósitos del distrito, vecindario o propiedad.** (Reglamento de Planificación Núm. 4, supra, sec. 98.05). En cuanto a las variaciones de uso es necesaria la celebración de una vista pública. (Reglamento de Planificación Núm. 4, supra, sec. 98.04) Asoc. de Res. de Parkside, Inc. v. Junta, Op. de 6 de noviembre de 1995, 139 D.P.R. ___ (1995), 95 J.T.S. 149 a la pág. 243. Esta variación de uso también está limitada por la norma de la auto inflicción del daño, es decir, cuando el promovente, conociendo las limitaciones impuestas por los requisitos de zonificación, se coloca voluntariamente en una posición que le causa un perjuicio irrazonable. Asoc. de Res. de Baldrich v. Junta, supra, a la pág. 772; Asoc. C.D. Octubre v. Junta, supra, a la pág. 334; Fuertes v. ARPE, supra, a la pág. 11388.

La Junta está facultada tanto para preparar y adoptar mapas de zonificación como para considerar y entender en las solicitudes de enmiendas a los mismos. 23 L.P.R.A. 62j(5); Reglamento de Planificación Núm. 4, supra, sec. 4.04. Cuando ejerce esa autoridad se ha establecido que ejercita una

función cuasi legislativa, ya que no adjudica una controversia sino que establece una reglamentación. 23 L.P.R.A. sec. 63d; Luan Investment Corp. v. Román, 125 D.P.R.533, 546 (1990). Se podrán considerar cambios a la zonificación de determinado sector o solar por petición de alguna persona, funcionario, organismo o a iniciativa propia de la Junta de Planificación. Reglamento de Planificación Núm. 4, supra, Sec. 4.04.

En el caso de autos ninguno de estos mecanismos se utilizó. La Junta no se pronunció acerca de las condiciones necesarias para asegurar el cumplimiento de los criterios establecidos para autorizar variaciones ni especificó la naturaleza y extensión de las mismas. No se estableció que ninguno de los usos permitidos en ese distrito fuesen factibles desde el punto de vista físico y económico, ni se acreditaron las circunstancias especiales y excepcionales que podrían motivar su autorización. Tampoco se utilizó el mecanismo de cambio de zonificación a pesar de que la convocatoria a vistas públicas de la Junta de Planificación fue con el propósito de considerar una enmienda a la consulta de ubicación y una propuesta enmienda al mapa de zonificación de Caguas para la reclasificación de los terrenos objeto de la consulta de un Distrito R-1 a uno C-4.

IV

Estamos ante un distrito clasificado en su mayoría como distrito residencial de baja densidad poblacional, **con una pequeña porción demarcada como industrial liviano.** Sin embargo, la Junta autorizó en 1988, vía consulta de ubicación, la construcción del proyecto industrial liviano **como si todo el terreno tuviera esa misma clasificación.** Luego se autorizó en 1991, vía enmienda a consulta de ubicación, la reagrupación de varios de los solares **indicándose que serían utilizados para la construcción de proyectos enmarcados dentro del los mismos parámetros de industrial liviano.** No obstante, a pesar de que ya ARPE había denegado el permiso para el anteproyecto de la construcción de un "Sam's Wholesale Club", por su uso no estar permitido en la clasificación de los solares en cuestión, poco después la Junta accede al permiso, vía enmienda la consulta de ubicación, para establecer un negocio Wal-Mart de comercio al detal.

Cuando Wal-Mart compra los terrenos en el 1991 **sabía** que los mismos estaban clasificados como D-1, autorizados para un proyecto industrial liviano. Wal-Mart se expuso a una situación donde se auto infligió el perjuicio. Aunque surge de los autos que ARPE había cursado comunicación al proponente donde se establecía que un establecimiento de ventas al por mayor estaba permitido en un distrito industrial liviano, razón por la cual aserta Wal-Mart que

compró el mencionado terreno, no es menos cierto que el proyecto contemplado es uno de ventas al detal el cual no está permitido en dicho distrito.

La **"consulta de ubicación"** es el vehículo administrativo procesal para que la Junta de Planificación evalúe, pase juicio y tome la determinación que estime pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas pero que las disposiciones reglamentarias proveen para que se consideren. <u>Misión Industrial de Puerto Rico</u>, <u>Inc. y otros</u> v. <u>Junta de Planificación y otros</u>, Op. de 30 de junio de 1998, ___D.P.R.___,(1998), 98 J.T.S. 79, a la pág. 1155. Esta consulta se identifica como pública o privada dependiendo de quien la origine, e incluye los proyectos de desarrollo extenso a considerarse bajo las disposiciones de las secciones 95.00, 96.00 y 97.00 del Reglamento de Planificación Núm. 4, supra, Sec. 2.00, (Definiciones.) En el ejercicio de esta facultad, la Junta de Planificación tiene gran discreción pero ciertamente no es un cheque en blanco, ya que está sujeta a las normas y requisitos consignados en la ley. En el ejercicio de tal discreción la Junta no puede obviar su propios estatutos en cuanto a usos de terrenos.

Los factores a considerar por la Junta como elementos de juicio para estudiar, tramitar y resolver las consultas de ubicación son, entre otros, aquellos cuya consideración dispone la Ley Orgánica de la Junta de Planificación (Ley Núm. 75 de 24 de junio de 1975, según enmendada), Ley de Municipios Autónomos (Ley 81 de 30 de agosto de 1991, según enmendada), Plan de Desarrollo Integral, Objetivos y Políticas Públicas del Plan de Usos de Terrenos de Puerto Rico, Planes de Usos de Terrenos (incluyendo Mapas de Extensión Urbana), Mapas de Zonificación, Mapas de Zonas susceptibles a Inundaciones, Planes de Ordenación Territorial adoptados por la Junta de Planificación, Planes Regionales Adoptados por la Junta, Reglamento de Planificación y otra reglamentación aplicable, Programa de Inversiones de Cuatro Años, localización específica del proyecto, usos existentes en el sector, situación de la infraestructura física y social del lugar, rasgos topográficos, condición de inundabilidad, condición del subsuelo, densidad poblacional, grado de contaminación del ambiente, distancia entre los terrenos y las áreas construidas, importancia agrícola, ambiental o turística de los terrenos y otras condiciones sociales, económicas y físicas análogas. Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, infra, sec. 7.01.

La Junta de Planificación también posee la facultad de considerar enmiendas a consultas ya aprobadas. La sección 7.02 del Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, (en adelante Reglamento de Adjudicación), Reglamento Núm. 5244 de 31 de mayo de 1995, 23 R.P.R. sec. 650.235 (1997), sobre Consideración a Enmiendas a Consultas, dispone que de surgir la necesidad de hacer cambios a un proyecto que alteren la **consulta aprobada vigente**, se someterá una solicitud de enmienda que explique en detalle la naturaleza de la enmienda y la razón para la misma así como toda la documentación pertinente y necesaria para que la Junta pueda tomar la determinación correspondiente. La solicitud y documentación se radicará en original e igual número de copias que una consulta nueva. Dependiendo de la naturaleza y magnitud del cambio propuesto, una vez evaluado la Junta podrá requerir la radicación de una nueva consulta y el cobro correspondiente.

Al aprobar la consulta del 2 de marzo de 1988, la Junta estableció que se utilizarían los parámetros aplicables de un distrito de zonificación I-1, esto es, de uso industrial liviano. Cuando aprobó la primera enmienda a la consulta reafirmó que los parámetros de zonificación industrial livianos permanecían intactos.

En los distritos de zonificación I-1 sólo se permiten ministerialmente los usos industriales livianos enumerados en

la sub-sección 27.01 y siguientes del Reglamento de Planificación Núm.4; ninguno de los allí contemplados constituyen usos comerciales como el propuesto.

La Junta puede, sin embargo, evaluar estos proyectos que contemplan un uso de terrenos no permitido ministerialmente utilizando el mecanismo de la consulta de ubicación, independientemente del distrito donde se propongan, pero limitada por las normas y requisitos reglamentarios.

La Resolución JP-94-255, Enmienda Nunc Pro Tunc, de 15 de abril de 1994, especifica la información que deben contener las consultas de ubicación para la evaluación de proyectos comerciales.  En ésta se enfatiza que el criterio principal en el proceso adjudicativo lo será **el uso de los terrenos**.

Los proyectos de desarrollo extenso serán evaluados conforme a las disposiciones de las secciones 95.00, 96.00 y 97.00 del citado Reglamento Núm. 4, supra, y comprende, entre otros, "el desarrollo de facilidades comerciales, industriales, institucionales, o recreativas que excedan veinte mil (20,000) pies cuadrados de construcción o en terrenos que excedan cuatro mil (4,000) metros cuadrados."

La sección 95 contiene los criterios generales a considerarse en los proyectos de desarrollos extensos.  Se establece que la determinación que se tome sobre una propuesta de un proyecto de desarrollo extenso descansará en

la evaluación de varios factores a ser presentados por la parte interesada, entre éstos, "conformidad del uso propuesto y su intensidad con el Plan de Uso de Terrenos hasta donde este haya sido adoptado o aprobado." Reglamento Núm. 4, supra, sec. 95.03. La sección 96 delega en ARPE los desarrollos extensos que cumplen con la reglamentación vigente, limitado por ciertos requisitos. La sección 97 se refiere a desarrollos extensos evaluados por la Junta de Planificación y son **aquellos cuyos propuestos usos de terrenos no están permitidos por la reglamentación aplicable.** Se dispone en la sección 97.01 que se podrá someter a la Junta cualquiera de los tipos de proyectos que se indican en esta sección, solos o combinados, "independientemente del distrito en que se propongan". Los peticionarios han interpretado que para los proyectos de desarrollos extensos regulados por la sección 97.0 no hay que cumplir con los requisitos de la sección 98 y demás disposiciones reglamentarias, en vista del citado lenguaje de la regla al efecto de que se le someterán los proyectos "independientemente del distrito en que se propongan". Aunque la regla faculta a la Junta de Planificación para considerar estos proyectos independientemente del distrito, **ello no exime a la Junta de observar los procedimientos establecidos y promulgados por esa misma agencia para la consideración y aprobación de tales proyectos.** Dicha

disposición ha de ser considerada en conjunto con el total del cuerpo reglamentario. La sección 97.03 establece que el uso propuesto ha de estar conforme con el "Plan de Usos de Terrenos" hasta donde este haya sido estudiado o adoptado. La sección 4.01 del Reglamento de Adjudicación, supra, establece que cuando una consulta conlleve la variación de las disposiciones reglamentarias vigentes, se requiere la presentación de una solicitud de variación debidamente fundamentada. Si lo que se interesa es la consideración de una excepción, deberá evidenciarse el cumplimiento de las condiciones establecidas por la Junta para ello. Véase 23 R.P.R. 650. 229 (1997), Misión Industrial de Puerto Rico, Inc. v. Junta de Planificación, supra, a la pág. 1155. Si la consulta conlleva un cambio de zonificación tiene que satisfacer los requisitos establecidos. Véase Reglamento de Planificación Núm. 4, supra, sec. 4.06, Montoto v. Pelayo Lorié, supra, a la pág. 662. La sección 4.01 del Reglamento de Adjudicación, supra, exige cumplir con los requisitos vigentes para cada consulta al momento de su radicación.

En el presente caso no ha sido estudiado ni adoptado un Plan de Uso para la región por lo que rige el Plan de Usos de Terrenos de Puerto Rico, supra, el cual persigue desarrollar industrias en lugares demarcados para esos fines por estar estratégicamente ubicados por sus características y por los servicios con que cuenta. El uso propuesto en este caso no

armoniza con el permiso concedido originalmente para el uso de los terrenos, toda vez que desde el 1988 éstos fueron contemplados para uso industrial.

V

Por otro lado, la aprobación de una consulta por la Junta tiene una vigencia de **doce (12) meses** a partir de la fecha de notificación de la misma si se trata de una consulta privada como en este caso, período que podrá ser modificado en beneficio del interés público, previa determinación de la Junta. Luego de autorizada y de advenir final y firme, el proponente deberá presentar el proyecto ante ARPE  para la próxima etapa correspondiente, dentro de la vigencia de la consulta.  Una vez radicado, corresponde a ARPE solicitar toda la información necesaria para la aprobación de la referida etapa, independientemente que el término establecido por la Junta haya expirado, ya que ARPE está facultada para continuar el proceso ante su consideración hasta su etapa final.  De vencer la vigencia de una aprobación o permiso de ARPE en un caso aprobado por la Junta de Planificación mediante consulta de ubicación, estando también vencida la vigencia de la aprobación a dicha consulta, el proponente deberá solicitar y obtener nuevamente la aprobación del proyecto **por la Junta como requisito para poder continuar con el trámite en ARPE**.  La aprobación de enmiendas a la consulta no modificará la vigencia de la consulta original a menos que

se indique de otro modo en la resolución aprobando la enmienda. Reglamento de Adjudicación, supra, sección 10.00. Pero la consulta ha de estar vigente para poder ser objeto de enmienda. Id, sec. 7.02.

El 9 de febrero de 1995, Wal-Mart solicitó ante ARPE una prórroga de un año al permiso de urbanización número 91-46-F-869-KPCU, expedido el 20 de febrero de 1992 por un término de tres años. El permiso prorrogado consistía en una urbanización industrial en un predio de terreno con cabida de 28.6446 cuerdas a ser segregado en ocho lotes con cabidas entre 3,095 y 57,539 metros cuadrados. La prórroga estaba sujeta a que el proyectista sometiera una certificación indicativa de que el proyecto continuaba conforme a las leyes y reglamentos aplicables y que de no iniciarse la construcción de las obras dentro del período de un año, el caso quedaría archivado. El lenguaje del mencionado permiso indica que la prórroga se concedió a los fines del proyecto industrial que se había aprobado mediante enmienda a la consulta de ubicación del 8 de marzo de 1991. El 6 de diciembre de 1995 la Junta autorizó, mediante enmienda a la consulta original, el mencionado proyecto comercial Wal-Mart. Esa enmienda no fue efectiva dado que la consulta de ubicación no estaba vigente. El estatuto claramente indica que la vigencia de la consulta de ubicación es de un año, a menos que se indique de otro modo, **y que la aprobación de**

**enmiendas a una consulta de ubicación no modificará la vigencia de la consulta.** En ninguna de las enmiendas se alteró la vigencia de la consulta original que databa del 1988. ARPE estaba facultada para continuar el proceso hasta su etapa final, pero el mismo se refería a un proyecto industrial y a ningún otro.

Por este otro motivo y la naturaleza y magnitud de los cambios propuestos a la consulta original, de haber estado la misma vigente, se requería la radicación de una nueva consulta.

No erró, por tanto, el Tribunal de Circuito de Apelaciones al así concluirlo.

VI

Dicho foro concluyó, además, que el proyecto propuesto habría de afectar significativamente el ambiente por lo que no era suficiente la Declaración de Impacto Ambiental no Significativa (DIA-N) emitida por la Junta de Planificación y avalada por la Junta de Calidad Ambiental. Concluyó, además, que era necesario la preparación de una Declaración de Impacto Ambiental (DIA), lo cual presupone un estudio ambiental más específico y abarcador.

La Ley Núm. 9 de 18 de junio de 1970, según enmendada, mejor conocida como la Ley de Política Pública Ambiental, 12 L.P.R.A. secs. 1121 et seq., se creó en consonancia con el mandato constitucional de la más eficaz conservación,

desarrollo y aprovechamiento de los recursos naturales. Véase, Constitución del Estado Libre Asociado de Puerto Rico, Art. VI, sec. 19.  El Legislador le impuso a la Junta de Calidad Ambiental la responsabilidad de implantar las disposiciones de esta ley y de fiscalizar el cumplimiento de la misma.  Véase  12 L.P.R.A. sec. 1129; Misión Industrial de P.R. v. Junta de Calidad Ambiental, Op. de 29 de junio de 1998, 98 J.T.S. 77.  García Oyola v. Junta de Calidad Ambiental, Op. de 21 de febrero de 1997, 142 D.P.R. ___ (1997), 97 J.T.S. 25 a la pág. 663.

El artículo 4 (c) de la Ley de Política Pública Ambiental, supra, establece que toda agencia o instrumentalidad gubernamental que proponga una actividad tiene que determinar, antes de realizarla, si su acción o decisión afectará significativamente la calidad del medio ambiente. Si la agencia proponente determina inicialmente, de acuerdo parámetros establecidos, que la actividad no tendrá un impacto ambiental significativo, deberá preparar una Declaración de Impacto Ambiental No Significativo, (DIA-N). Esta es un documento contentivo de un análisis ambiental que señala las razones por las cuales se determina o apoya una determinación de que la acción propuesta no afectará significativamente el ambiente, y de comentarios y endosos de cualquier otra agencia que haya evaluado la acción propuesta. Reglamento Núm. 3106 de 1 de junio de 1984 sobre Declaración de Impacto Ambiental (Reglamento DIA, en adelante) secs. 2.1 (k), 4.2. La Junta de Calidad Ambiental emitirá sus comentarios y determinará si el contenido de la declaración no significativa es adecuado en términos de cumplir con el espíritu y la letra del Art. 4(c) de la Ley de Política Pública Ambiental. En sus comentarios podrá imponer las medidas de protección al ambiente que estime necesarias y razonables. Reglamento DIA, supra, secs. 4.3.2, 4.3.3, 4.3.4. Por otro lado, la Junta tiene facultad cuando así lo determine, para requerirle a la agencia proponente la preparación y emisión de una Declaración de Impacto Ambiental (DIA), que es un proceso que analiza una propuesta acción gubernamental desde el punto de vista de su efecto sobre el ambiente y los riesgos a la salud pública, según dispuesto por la Ley de Política Pública Ambiental y que culmina con un Documento de Viabilidad Ambiental, Reglamento DIA, supra, sec. 2.1 (h). Este documento es uno más extenso y abarcador que el DIA-N. Véase Reglamento DIA, supra, sec. 5.0 y siguientes.

Surge de la totalidad del expediente que la Junta de Planificación evaluó el proyecto desde el punto de vista ambiental y determinó que el

mismo no causaría un impacto ambiental adverso siempre y cuando se cumpliesen con las recomendaciones establecidas en la resolución de 6 de diciembre de 1995. La Junta de Calidad Ambiental, por su parte, evaluó el referido documento y la información sometida[2] y en comunicación de 2 de agosto de 1995, declaró haber analizado el documento ambiental sometido y determinó que la Junta de Planificación había cumplido con la fase de evaluar el posible impacto ambiental de la acción propuesta de acuerdo a la Ley de Política Pública Ambiental, concluyendo que se había cumplido con la reglamentación ambiental aplicable al efecto. En dicha comunicación, la Junta emitió unas recomendaciones para la etapa de construcción y operación del proyecto, de lo cual se observa que el documento fue debidamente estudiado por la entidad ambiental. El expediente ante nos contiene evidencia sustancial para sostener la determinación de la Junta, órgano administrativo especializado. No es irrazonable la determinación a la que llegaron las agencias concernidas. Erró el Tribunal de Circuito de Apelaciones al requerir una DIA.

No obstante, de someter una nueva consulta de ubicación a tenor con nuestros pronunciamientos de hoy, competerá a las agencias gubernamentales concernidas el evaluar los posibles cambios ocurridos en el área y actuar conforme a los mismos.

Por los fundamentos antes expuestos se dictará sentencia modificando la sentencia del Tribunal de Circuito de Apelaciones a los fines de dejar sin efecto aquella parte de la misma que exige la preparación y

---

[2] Los endosos de las agencias gubernamentales concernidas, esto es, Departamento de Recurso Naturales, Autoridad de Carreteras, Autoridad de Energía Eléctrica, Autoridad de Acueductos y Alcantarillados, los cuales fueron actualizados en 1995 a base del análisis de la tienda Wal-Mart, un estudio hidrológico-hidráulico preparado en diciembre de 1988 por el Ing. Herminio Álamo Morales para el proyecto original "Halais Industrial Park", el permiso Número 89LP50105 de 25 de octubre de 1989 del Cuerpo de Ingenieros de Estados Unidos y una carta de 29 de marzo de 1995 de dicha entidad extendiendo la vigencia del referido permiso para la canalización de la quebrada localizada en el predio.

presentación de una Declaración de Impacto Ambiental (DIA), y así modificada, se confirmará la misma en todas sus partes.


José A. Andréu García
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


T-JAC, Inc.
(Wal-Mart Caguas)

      Peticionarios-Recurridos

          v.


Caguas Centrum Limited
Partnership, S.E.                    CC-98-9      Certiorari
Manely Berenson Assciates     Cons. CC-98-33
Puerto Rico

      Interventores-Recurrentes

Junta de Planificación

      Recurrida-Peticionaria


                          SENTENCIA


          San Juan, Puerto Rico, a 12 de abril de 1999


          Por los fundamentos expuestos en la Opinión que
     antecede, la cual se hace formar parte íntegra de la
     presente, se dicta sentencia modificando aquella dictada
     por el Tribunal de Circuito de Apelaciones el 19 de mayo
     de 1997, en el caso T-JAC, Inc. (Wal-Mart Caguas) v.
     Junta de Planificación de Puerto Rico, Caso Número KLAA
     96-00360, a los fines de dejar sin efecto aquella parte
     de la misma que exige la preparación y presentación de
     una Declaración de Impacto Ambiental (DIA).    Así
     modificada, se confirma la misma en todas sus partes.

          Lo pronunció y manda el Tribunal y certifica la
     Secretaria del Tribunal Supremo.  El Juez Asociado señor
     Negrón García concurre en el resultado sin opinión
     escrita.  El Juez Asociado señor Rebollo López se
     inhibió.


                     Isabel Llompart Zeno
                  Secretaria del Tribunal Supremo